Per Curiam :
This is an employee-removal case in which the plaintiff asserts that she was improperly denied certain procedural rights by her employing agency. The charges pertained to falsifications on an application for federal employment (Form 57). The facts are set forth in the report of Trial Commissioner Paul H. McMurray and we adopt his recommended findings (with slight modifications). On the basis of those findings, we hold that plaintiff was not deprived of any material right.
Plaintiff first claims that, in the proceedings for her removal from the Air Force in 1957, she was not given an adequate statement of all the reasons for her proposed removal. She bases this contention on the testimony (at the trial) of the local personnel officer that “there were some other indications on the failure to qualify; that she might not be the best employee to be retained in the Government.” This bit of evidence will not bear the weight plaintiff puts upon it. In its context, the testimony clearly related (a) to the second of the two falsifications with which plaintiff was charged, and (b) to the reasons why the Air Force exercised its discretion not to overlook plaintiff’s falsifications but to seek her removal (see finding 50). There is no showing that the written charges failed to embody the actual charges on which the employing agency acted.
The second contention is that plaintiff requested but was denied the right to be personally heard by the immediate employing installation before her removal. There is insufficient factual support for the argument that she affirmatively requested such a hearing. Her letter of June 12, 1959, contains no such unequivocal request, and the Commissioner has found that she did not ask for a hearing. Nor is there sufficient evidence that she did not, in fact, have such a personal conference at that level. In any event, she was afforded a full opportunity (of which she took advantage) *425 to appear before an. ad hoc Grievance Committee of the Air Force.
The final contention is that plaintiff was denied fair procedure because the local personnel officer prepared a brief written statement which was not shown to plaintiff but was nevertheless appended to the report of the ad hoc Grievance Committee. This short statement contained nothing which had not already been presented to plaintiff; its inclusion in the appellate record cannot have harmed her in any significant way.
Plaintiff is not entitled to recover and her petition is dismissed.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Paul H. McMurray, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff is and for all periods involved in this claim has been a citizen of the United States.
2. For some time prior to April 3, 1944, plaintiff was employed by the United States Army as a senior Clerk, CAF-5, in the Post Quartermaster Office of Columbus Army Air Field, Columbus, Mississippi. On or about April 4, 1944, plaintiff received the following letter from the Civilian Personnel Officer, Headquarters of Columbus Army Air Field:
1. As a result of the findings of an investigation conducted by Captain Henry H. Eightor, Jr., Investigating Officer, and recommendations thereof approved by the Commanding Officer, this Headquarters, your services as Senior Clerk, CAF-5, in the Post Quartermaster Office are hereby terminated at the end of your accrued and accumulated annual leave for the reasons quoted below.
2. “That Mrs. Cora S. Nelms is an experienced and efficient employee but guilty of continued insubordinate conduct to the Post Quartermaster and the Officer in Charge of Purchasing and Contracting, her immediate superiors, who were vested with responsibility and accountability of her work.
*426 “That Mrs. Cora S. Nelms Iras not remained on amicable terms with those employees working over her, under her, and on equal terms with her.
“That, in the opinion of the Investigating Officer, it is not to the best interest of the Government that Mrs. Cora S. Nelms remain employed at the Columbus Army Air Field but that her experience and ability might be valuable elsewhere.”
3. You have (5) days in which to reply to these charges. Your reply will be reviewed, and if in the Reviewing Officer’s judgment, you have not satisfactorily cleared the above charges, you will be advised and requested to report to the Civilian Personnel Office on 8 April 1944 and your terminal leave will begin 8 a.m. on 10 April 1944, and will end 1 p.m. on 1 May 1944.
3. Plaintiff did not make a complete reply to the charges preferred against her, did not ask for a personal hearing, and did not report to Civilian Personnel Office as requested. At a later date in April 1944, defendant issued and sent to plaintiff a Notification of Personnel Action of removal from employment by reason of insubordination. Plaintiff was ill at the time. No appeal was taken within the 5 days allowed with respect to her removal.
4. Under date of June 19,1945, plaintiff made application for Federal employment, on Form 57, with Surplus Property Office, Treasury Department-Department of Commerce, in which she described her employment with the Quartermaster at Columbus Army Air Field in 1944 and gave as reason for leaving: “Terminated.” In the application, in answer to question 18, “Have you ever been discharged for misconduct or unsatisfactory service, or forced to resign from any position,” plaintiff answered by placing “x” in the column captioned “No.” Plaintiff was given the Surplus Property position.
At the trial plaintiff was given an opportunity to explain why she answered question 18 “No” when the correct answer was “Yes.” She was asked why she used the word “Terminated” instead of the word “separated.” She was asked why she did not add to the reason for leaving “discharged for insubordination,” which phrase was contained in the re *427 moval notice. The record shows that no adequate answer or explanation was given to these questions.[1]
5. On July 6, 1948, plaintiff made an application for employment with the Veterans Administration, on Form 57, in which, with respect to her employment at Columbus Army Field in 1944, she gave as reason for leaving “Terminated”, and to question 29, “Have you ever been discharged or forced to resign for misconduct or unsatisfactory service from any position,” she answered “No”. She was given employment by the Veterans Administration.
6. On August 10, 1950, plaintiff filled out an application for Federal employment on Form 57, which was apparently used some months later at the General Services Administration. With respect to employment at Columbus Army Air Field, she stated as her reason for leaving “Terminated.” *428 In answer to question 31, “Have you ever been discharged or forced to resign for misconduct or unsatisfactory service from any position,” she answered “No”.
Plaintiff was again given an opportunity to explain why she did not state that her reason for leaving Columbus Army Air Field was a discharge for insubordination and why she did not answer “Yes” to question 31. She stated that she would like to make an additional statement with respect to the application made to the General Services Administration. Her statement and some excerpts of additional testimony are as follows:
*429 A. On each, of these applications you may or may not have pulled them away from a statement from each personnel officer I talked to.
You are assuming that I lied to each personnel officer, but each personnel officer that I ever talked to, after I left the War Department, including Mrs. Wilkerson, including Colonel Thayer — I said, “I got fired in 1944 and I don’t know what happened. It was in the nature of a termination. It has been removed from my file. I do not know where it is.”
And I will show it as being “fired,” and they both of them said, “Well, those are Army personality charges; everybody had them.”
*430 Anri I now said, “Will yon please call my file and try to find it.”
I asked more than one personnel person that. And if he had contacted each agency and found out the personnel person I talked to — now, I am more concerned about what happened to my application with the Air Force Office of Scientific Research, and the evidence that was of record there and discussed, than I am for them to dismantle my files and pull the records away, because each time I showed the record and, as I told the Commissioner yesterday, the records were sent there.
There is a record of it. It is in my grievance and nobody would talk to me. They were too busy to talk to me.
*431 They wouldn’t go over my records then but, now, they want to bring them out.
Mrs. Wilkerson didn’t have time-
The COMMISSIONER: Just a minute. The fact that somebody was too busy to talk to you, is that a reason for checking a certain answer up there?
The Witness: Yes. * * *
^
The Witness. My testimony, to me, is “termination” was what I had that resulted in — I got fired.
The Commissioner: Yes, but he asked you if you had any additional reasons beyond what you had testified at length about for using the word “termination.”
And now, you are telling about people who wouldn’t talk to you.
The Witness: Well, I-
The Commissioner : I am just trying to get a relationship between what you are saying-
The Witness : I am telling about each exhibit, that I talked to the personnel people, that I didn’t conceal anything-
$ $ * $ ‡
By Mr. Lowrt:
Q. Mrs. Nelms, who was this General Services Administration personnel officer whom you said that you told you had been fired at Columbus Air Field ?
What was his or her name?
A. I think, probably, it was Mr. Dolan, but I talked to Mrs. Broth Henderson and different people several times and Miss Morris in War Assets, which is all the same personnel, you see, now.
That is the same agency.
Miss Morris is the one who knew about my displacement. I asked her to get my records. I was displaced on the ground that there were no records there and reduction in force.
And I asked subsequent employment people.
Q. We are only talking about General Services Administration personnel officers.
# íjí ^ # #
By Mr. Lowrt:
Q. Did it ever occur to you to correct that right on the job application and strike out the X at “No” and put it under column “Yes” at the time you were making the application?
A. Do I need to go over that again?
*432 Q. That is a simple question.
A. The records were not in my folder-
Mr. Witsil: She doesn’t understand your question.
The COMMISSIONER: No, when you filled out the form, it was in your hand.
Mr. Witsil: Mrs. Nelms, when you filled this form out for this particular- — may I have a second, please?
This form, which was for the job, was filled out August 10, 1950. Now, let’s go back to August 10, 1950. You answered it thus and so. You submitted it.
The question presented to you now is: Did it ever occur to you at that time, August 10,1950, that you should amend this or change it or offer some explanation as to the question of termination or as to why you said “no”-
Mr. Lowry: On the face of it.
Mr. Witsil : —on the face of the instrument, on this, not on anything else or not telling someone orally but on this document?
Did it ever occur to you that you should put anything down other than what you did?
Mr. Lowry: I will adopt that question.
The Witness : I can’t say yes or no, because, as I have stated, I have stated my reasons all the way through.
% }}í íjs íji sfc
The Commissioner : If I can interrupt for a minute:
You see, all of this testimony about what you explained to the personnel officers may have its place in the record, but there is no need of going back and saying, “Well, I explained it to everybody.”
The point is, why did you put it on the form ? That is the only tiling, I think, that counsel has been working on.
Mr. Lowry: Yes, or correcting the form.
The Commissioner: Trying to get you to explain whether you even ever thought, “Well, maybe, I should correct that; I said no, and the answer is really yes.”
I mean, that is the sense of his question, as I understood it.
The Witness : In the War Department, the day they accepted me, they told me not to put it on there.
By Mr. Lowry:
Q. We are not in the War Department now.
We are in the General Services Administration.
A. I am telling you I got instructions from the War Department and then later it left my file.
*433 The COMMISSIONER: You mean you were told by that agency to answer it “no” ?
The Witness : Yes, the Secretary of War’s office, the personnel man.
I said, “shall I put my X on this side?”
And he said, on that very first application, “The War College doesn’t have it on there.” But, as I stated before, I always showed them this.
It disappeared, but whether it was expounded, whether it was lost — but please call my War Department records and try to find it.
The Commissioner: But you followed that procedure—
The Witness: Yes.
The Commissioner : —right on through ?
The Witness : Until I found out.
The Commissioner : But your testimony, to the effect that you didn’t conceal anything, is supported by your testimony that in each interview with somebody else, with respect to a prospective job, you told them the story even though you continued to say “no” on the form.
Is that correct?
The Witness : Yes. And I was told that in the beginning it wasn’t on the War Department’s. And I went to the Secretary of War’s Office, and asked them, “Must I put the X on that side?”
It disappeared from my files. And I do not know where it went.
^ Í ‡ ‡
[By Mr. Lowry]
Q. Mrs. Nelms, let me put it this way:
Did you ever receive advice or a suggestion by anyone in the United States Government that you should put an X down in the “no” column of your job applications on the question “Have you ever been discharged” ?
And it is a rather long question, and I will ask the reporter to repeat it in a loud tone of voice ?
(The reporter read the question.)
The Witness: Yes.
By Mr. Lowry:
Q. When was the first time that you received such an advice or suggestion?
A. I just told you a few minutes ago, I didn’t remember exactly when I went there.
Q. Went where?
A. To the Pentagon.
*434 Q. To tbe Pentagon ?
A. Tbe Office of the Secretary of War.
Q. Was this after you had been, discharged at Columbus Air Field?
A. Yes. I took all the papers-
Q. Wait a minute. Was this after you had gotten your Army War College job ?
A. No, prior to that. After I had had a clearance from the Civil Service Commission.
I cleared it further through the Office of the Secretary of War.
Q. Now, who was the Government official who advised or suggested to you that you put an X on the “no” column in your job application forms on the question “Have you ever been discharged” ?
A. The man that I cleared this through was Mr. Mawson.
Q. Will you spell that ñamé ?
A. M-a-w-s-o-n.
Q. And what j ob did he hold ?
A. He was very high up in the Secretary of War’s Office.
I don’t know. In personnel.
Q. Who was the Secretary of War at that time?
A. I do not remember. It was during the War. i do not remember who the Secretary-
The COMMISSIONER: Was it Secretary Stimson?
The Witness : Yes, I’m pretty sure it must have been. It was 19-
By Mr. Lowry:
Q. Now, do you happen to know the name, the first name or the initials of this Mr. Mawson.
A. No, but he is well known in personnel circles.
Q. Eight now?
A. Yes.
Q. Do you know where he is ?
A. The last I heard of him he was at Cameron Station.
Q. Which is where ?
A. I don’t know.
Mr. Witsil: Down in Virginia. He is a member of the Quartermaster Staff with the Department of the Army.
The Commissioner: You mean, he is still with the Army?
The Witness: Yes.
*435 Mr. Witsil: He is the Personnel Officer at Cameron Station, I am qnite certain.
The WitNess : He will know, too, about terminations and separations, the difference.
^ ‡ $
The Commissioner: We are talking about somebody saying, in effect, that you disregard this prior record when you made out your applications.
The Witness : Well, I just asked him-
The Commissioner : You testified that you were told to-
The Witness : I remember they said, “Well, it’s just pretty ridiculous” or something of that nature.
It was a termination, it was understood.
Mr. Lowry: My question, Mr. Commissioner, was— and she had testified, if I understood her correctly, that she asked him whether she should move the X over from the “no” to the “yes” column.
The Witness : I have stated, he didn’t seem to think it was of too much importance-
By Mr. Lowry :
Q. Did you ask him that question?
A. I told you we discussed it and he cleared it, so far as I knew, for a better job.
Mr. Witsil: Answer his question. His question is: Did you ask Mr. Mawson the question “Shall I move the X from the ‘no’ to the ‘yes’ column?” Did you ask Mr. Mawson that question ? Yes or no. If you don’t remember, say, “I don’t remember.”
The Witness: I don’t remember the exact question I asked Mr. Mawson in 1945, but I-
The Commissioner: But did he advise you that it wasn’t necessary-
The Witness: Yes.
The Commissioner : -to put the record of the prior discharge in this application — in an application for a job?
The Witness : He said it was ridiculous or something of that nature. Accepted by application.
I got a better job-
# # íjí *
Q. [By Mr. Lowry] Now, did you have any conversation with the personnel officers at the time on or about July 6,1948, that you submitted your job application to *436 the Veterans Administration, now Defendant’s Exhibit 3?
A. Yes.
Q. With respect — wait a minute — respecting your check mark under the “no” column of Question 29, “Have you ever been discharged” ?
A. Yes, we had a conversation about it.
Q. And what was the name of that personnel officer ?
A. I don’t remember his name but it will be shown on my records, I imagine.
Q. It was a man?
A. Yes, and-
Q. Do you know whether he is dead or alive ?
A. No, I — his name has passed me. I don’t remember his name. But I do remember he told me that they checked it or something, but that they would accept it as it was.
I do remember he told me something about that, that he, he checked through something. I don’t know what, but it was all right with them.
I do remember that.
Q. Whether you had been discharged or not ?
A. Yes. Oh, yes. I do remember-
Q. But he didn’t tell you to correct your-
A. No, he didn’t tell me.
Q. And you didn’t correct it?
A. That was-
Q. Now, didn’t you-
The CommissioNer: Well, let her answer that last question.
He said, “You didn’t correct it or change it.”
The Witness: I didn’t correct it. I went on duty after he called me that day — they made prior clearances, you see.
By Mr. Lowrt :
Q. They?
A. Personnel people. He cleared and called me after he had the record, and he told me, “By the way, I found this” — I remember he said,_ “By the way, I found — I checked with the Commission,” I think he said, “and found something about that separation.”
Q. What separation?
A. The termination. And he said it is all right with them.
But, as I remember, that is what-
The Commissioner : In other words, you told him the story that you had been telling other personnel officers?
*437 The WitNess: Yes.
The Commissioner: And after he had that story he subsequently called you and said that it had been cleared with some agency or he checked with some agency-
The Witness: Yes.
The Commissioner :-and that you were employed ?
The Witness : Yes, to come on in. And so I didn’t go back in and change the application, but I don’t remember his name.
7. On February 2,1951, plaintiff made an application for employment with the General Services Administration on Form 57. In that application, with respect to her job description of the Columbus Army Air Field position, she gave as reason for leaving, “Left State.” In answer to question 29, “Have you ever been discharged or forced to resign for misconduct or unsatisfactory service from any position,” she answered “No”. She was employed by the General Services Administration.
8. On January 1, 1954, plaintiff filled out and signed an application for employment on Form 57, in which, with respect to the description of her job at Columbus Army Air Field, she gave as her reason for leaving “In interest of Government: Better positions.” To question 31, “Have you ever been discharged, or forced to resign, for misconduct or unsatisfactory service from any position,” she answered “No”.
9. On November 28, 1954, plaintiff made an application to the U.S. Marshal at Memphis, Tennessee, for Federal employment, on Form 57, in which she omitted any prior job description or reference to her employment at Columbus Army Air Field in 1942-1944. In answer to question 31, “Have you ever been discharged, or forced to resign, for misconduct or unsatisfactory service from any position,” she answered “No”. She obtained temporary employment with the U.S. Marshal.
10. Under date of December 30, 1954, plaintiff filled out and signed an application for Federal employment on Form 57, later changing the date of her application to April 12, 1955. On July 15,1955, at Los Angeles, California, plaintiff submitted the application to the Bureau of Land Manage *438 ment there. In the application plaintiff included her Columbus Army Air Field job description, but gave the reason for leaving as “Better position,” and to question 31 of the application, “Have you ever been discharged, or forced to resign, for misconduct or unsatisfactory service from any position,” she answered, “No”.
11. Immediately above the dates and signatures of plaintiff, the forms 57 uniformly contained the following:
I CERTIFY that the statements made by me in this application are true, complete, and correct to the best of my knowledge and belief, and are made in good faith.
The following statement is contained in only two forms 57 out of a large number put in evidence:
ATTENTION: If you are appointed, all facts you give will be subject to investigation including a check of your fingerprints. Before signing this application, go back over it to make sure you have answered all questions correctly and fully, so that your eligibility can be decided on the basis of all the facts. Admitted unfavorable information about such matters as arrests or discharges will be considered together with the favorable information in your record in determining your present fitness for Federal employment. However, a false statement or dishonest answer to any question may be grounds for cancellation of your application or your dismissal after appointment and is punishable by law.
The dates of those two are January 1, 1954, which was later marked “Passed Non Comp Test * * * 7/12/56” and “Eligible Clerk Steno” and initialed “BHW” which are obviously Mrs. Wilkerson’s initials. The other is dated March 30, 1958.
12. In late June or early July 1956, plaintiff presented the Form 57 dated January 1,1954, to Bernice H. Wilkerson, Bolling Air Force Base Placement and Employee Management Relations Specialist. At that time Mrs. Wilkerson’s duties extended to the Air Force Office for Scientific Research, physically located in Washington, D.C., but serviced by the Central Personnel Air Force Office, at Bolling Air Force Base. Mrs. Wilkerson asked plaintiff to bring her application for employment up to date. Plaintiff had al *439 ready typed a Form 58, a supplement to Form 57, of prior job descriptions. She dated the Form 58 July 9, 1956, and gave it to Mrs. Wilkerson. On the Form 58 plaintiff set forth, as a prior job description, her employment with the Land Office, Bureau of Land Management, and the reason for leaving as “Terminated as GS-3 Typist.” An additional statement was added below the “reason for leaving.” (See finding 15.)
13. Mrs. Wilkerson accepted plaintiff’s Forms 57 and 58 and suggested that plaintiff take a written examination as Clerk-Stenographer. Plaintiff took the examination, made a passing grade, and was recorded as eligible July 12', 1956. Plaintiff testified at some length during the trial about her interview with Mrs. Wilkerson, stating that she advised Mrs. Wilkerson that she had been dismissed from Federal employment in 1944 at Columbus Army Air Field and in California in 1956. This was the first time she had seen or been interviewed by Mrs. Wilkerson. The interview took place prior to July 12,1956.
Plaintiff testified that Mrs. Wilkerson made no comment when she told her of the two prior dismissals from Federal employment. Plaintiff also testified Mrs. Wilkerson subsequently told her she could take an examination and requested that she do so. Plaintiff took an examination and was accepted as an employee. She began working at the Air Force Office of Scientific Eesearch on July 19, 1956. She was removed from such employment by dismissal effective July 9, 1957. During this period of employment she was promoted with a substantial increase in salary and given a satisfactory efficiency rating.
The record indicates that the defendant had full and complete data concerning plaintiff’s prior dismissals in its records at the time plaintiff was employed, although a portion of the 201 file had apparently been previously sent to the Eecords Center at St. Louis, Missouri. According to testimony of Mrs. Nelms, she made copies of her records of prior employment available to defendant before she was employed, and also told the appropriate representatives of defendant during personal interviews that she had been dismissed from Federal employment in 1944 and 1956. This *440 testimony of plaintiff was contradicted by the testimony of Mrs. Wilkerson insofar as plaintiff’s interview with, her was concerned.
The testimony of Mr. Mawson at the trial was to the effect that he interviewed many people who were seeking employment but did not remember talking to plaintiff, who identified him in the courtroom during the trial as the official who talked to her after she was referred there by a Member of Congress. Mr. Mawson was Eecruitment Coordinator in the Office of the Administrative Assistant of the Personnel Manager at the Pentagon. He said, “There is something familiar about Mrs. Nelms but I cannot tell you what it is. * * * I don’t remember interviewing her.-’
14. On July 19, 1956, plaintiff entered on duty at the Air Force Office of Scientific Research. On the same day, for the purpose of “determining creditable service for leave purposes and retention credits for reduction in force,” plaintiff executed Form 144 — Statement of Prior Federal and Military Service.
In answer to question 5 on the Form 144, she checked the appropriate block indicating that she was absent from prior periods of Federal employment more than 6 months. She further explained such period of absence by the word “termination” with respect to her employment at Columbus Army Air Field and at War Assets Administration by the words “Red. in Force — iy2 yrs — Displaced career empl.” and added the comment “Worked for British Gov’t.”
15. Under date of January 9,1956, plaintiff acknowledged receipt of the following letter from the Director of Personnel, Bureau of Land Management, dated January 4,1956:
Area I of the Bureau of Land Management has advised the Office of Personnel Management that your performance as a Land Law Clerk (Typing), GS-3, in the Los Angeles Land Office has been unsatisfactory, and recommends your removal during your probationary period. You are advised that your services during the period from June 13, 1955, to the present time were found to be inadequate from the standpoint of performance of your duties, failure to follow instructions, and an uncooperative and disturbing attitude.
*441 Accordingly, yon will be separated at the close of business January 13, 1956, for “Failure to Qualify During Probationary Period.” A Standard Form 50 (Notification of Personnel Action) for this action is attached.
Apparently neither Mrs. Wilkerson nor anyone else in the Bolling Civilian Personnel Office knew of the foregoing correspondence until receipt in late March or early April 1957 of a section of the 201 file from the Federal Eecords Center in Missouri.
In the fall of 1956 Mrs. Wilkerson received from the Federal Eecords Center a folder of plaintiff’s official personnel record (known in Government circles as her 201 file). (This folder did not contain the complete 201 file.) Mrs. 'Wilkerson reviewed the folder and noted therein Bureau of Land Management Form 50 — Notification of Personnel Action — of plaintiff’s separation (effective January 13, 1956) for disqualification, having failed to qualify for the position of Land Law Clerk during her probationary period.
Mrs. Wilkerson at that time reviewed the entire folder but found nothing in it respecting plaintiff’s employment at Columbus Army Air Field in 1944.
Mrs. Wilkerson called plaintiff in to discuss the matter of her prior separation from the Bureau of Land Management as being disqualified for the position, in view of her statement in her job description that her “reason for leaving” the Land Office was “Terminated as GS-3 Typist.” Immediately below that reason for leaving the following statement had been added by plaintiff when she executed the form:
Was on GS-3 Eegister. Had permanent status as Clerk-Purchasing Agent. Given very heavy clerical duties — over Purchase and Supply; also notation and status clerk on Land books. Both required heavy lifting, as I had to lift most of the supplies, as well as the land books. I reported this as a physical hazard. Also requested that my job be surveyed and that I be allowed to qualify for some of the clerical positions which were open (and I was performing the work). The manager had me terminated without any notice whatsoever. I left California and returned east. Had been on the Typist *442 Register there — took typist test here with grade of 83— grade there was 84.
After consultation with her superiors, Mrs. Wilkerson came to the conclusion that plaintiff had not understood that she had actually been dismissed from the Bureau of Land Management in Los Angeles, and that her statements in the application of early summer 1956 for employment in the Office of Scientific Research, in answering “No” to the question whether she had ever been discharged from Federal employment was not of such serious nature as to prevent continuing her employment at the Office of Scientific Research. Nevertheless, the Civilian Personnel Office made formal inquiry of the Civil Service Commission as to whether to continue plaintiff in employment, in view of her separation from the Bureau of Land Management as disqualified.
On October 23,1956, the Dallas office of the Civil Service Commission notified the Director of Civilian Personnel at Bolling as follows:
Reference is made to the case of Cora S. Nelms, born December 26, 1900, which Was forwarded to the U.S. Civil Service Commission, Washington, D.C. The file has been referred to this office for review and determination.
It is our decision that Mrs. Nelms’ application may be accepted insofar as her admitted separation from her most recent Federal employment is concerned.
The Personnel Record folder and the other papers are returned.
Thereafter, plaintiff was continued in her employment in the Air Force Office for Scientific Research, and was promoted from GS-4 to GS-5.
16. In the spring of 1957, when it appeared that there would be a reduction in force, the Civilian Personnel Office at Bolling sent for that part of plaintiff’s 201 file still located at the Federal Records Center at St. Louis, Missouri, which might reveal the prior employment and leave data required in determining which employees would be affected by the contemplated reduction in force. When the file arrived, it contained a ■ Form 50, which disclosed that plaintiff had been discharged from employment at Columbus Army Air *443 Field in 1944 for insubordination. The form was called to the attention of Mrs. Wilkerson by a clerk who was consolidating the personnel records of plaintiff. It was thus discovered that in her application for Federal employment plaintiff made false or incorrect statements concerning her prior removal and the reason therefor. It was also determined that plaintiff did understand what separation because of disqualification signified, i.e., that it was not simply a termination, but a discharge. After making a report to her supervisor and to General Gregory, her Commanding Officer, Mrs. Wilkerson prepared and personally gave the following letter to plaintiff:
1. This notice is issued in accordance with the provisions of Part 9.102(a) (1) of the Civil Service Regulations. You are hereby given thirty (30) days notice of proposed action to separate you from your position of Clerical Assistant (Stenography), GS-301-5, not earlier than 9 July 1957 for the following reason:

Falsification of Application for Federal Employment

(a) Reference is made to your application for Federal Employment dated 1 January 1954 and Supplemental Sheet dated 9 July 1956. Appointment to your present position effective 19 July 1956 was based upon contents of the above application. Information has been disclosed that you failed to include certain information in your application for employment. You would not have been appointed if this information had been known by this activity at the time you were selected,
(b) You answered “No” to Question Number 32, winch states, “Have you ever been discharged from employment because your conduct was not satisfactory or your work was not satisfactory; have you ever resigned after official notification that your conduct was not satisfactory or your work was not satisfactory ?” However, official records reveal that you were removed 24 April 1944 for Insubordination from Columbus Army Air Field in Columbus, Mississippi. Records also indicate “Separation (Disqualification)”, effective 13 January 1956 from the Department of Interior, Area One Land Office, Los Angeles, California.
2. You are hereby informed of your rights to reply personally and in writing to this notice of proposed separation and to show cause why the action should not be taken. You may submit affidavits and evidence in support of your answer.
*444 3. Your reply must be made within ten (10) days from the date you receive this letter. A written reply should be mailed to the Directorate of Civilian Personnel, Bolling Air Force Base 25, D.C.
4. You may discuss your case with Mrs. Wilkerson, Employee Utilization Officer, Directorate of Civilian Personnel, Code 1261, extension 298.
5. No decision to separate you has been made or will be made until after the time allowed you for reply. Your reply will be given full and careful consideration before final decision is made. Whether you reply or not, a written notice of final decision will be given you.
6. You will continue to work in your present position during the notice period.
Plaintiff refused to acknowledge receipt of the foregoing letter. Mrs. Wilkerson wrote on the face of the letter the words “Issued 6/7/57,” and her own name as a witness. Another Government employee, Robert G. McGhee, who was also present when the letter was given to plaintiff, signed lfis name as a witness.
17. Under date of June 12, 1957, plaintiff sent a letter to Bolling Air Base Civilian Personnel office. She did not submit affidavits or other evidence in the letter to support her answer. She did not state that she had, within the preceding 10 days, discussed her case with Mrs. Wilkerson, and she did not ask for a hearing. She did not continue to work at the Office of Scientific Research or offer any excuse for not doing so, nor did she ask for leave of absence.
18. Plaintiff’s letter of June 12, 1957, was received, considered, and, on June 20, 1957, answered by the Director of Civilian Personnel as follows:
1. You are hereby notified that final decision has been made to remove you from the service, effective 9 July 1957. It has been determined that your removal is for such cause as will promote the efficiency of the service. This action is being taken in accordance with the provisions of Part 9.102(a)(1) of the Civil Service Regulations.
2. A letter of charges, dated 7 June 1957, was delivered to you on 7 June 1957. This letter stated in detail the reason for your proposed removal. Specifically, you were charged with falsification of your application for *445 Federal employment date 1 June[2]1954 and supplemental sheet dated 9 July 1956.
3. You were afforded an opportunity to reply to the statement of charges within ten (10) days from the receipt of the letter. You did reply to the charges in a letter dated 12 June 1957. In this letter you admitted that you had selected an old application which was evidently incomplete. If you recall, your application dated 1 January 1954 was presented when you applied for employment. You indicated your last permanent position was with General Services Administration from May 1951 to January 1954. You were requested to bring your application up to date and you completed a SF 58 on 9 July 1956. On this sheet you listed your employment with the Land Office, Los Angeles, California. Your reason for leaving this place of employment was indicated “Terminated as GS-3 Typist”. This was not considered as a removal when the application was reviewed by this command. However, SF 50 in your 201 file indicated “Separation (Disqualification) On the application dated 1 January 1954, which was subsequent to the removal from Columbus Army Air Field, you listed this period of employment but gave as a reason for leaving “In interest of Government— Better Position”. Official records indicate you were removed for insubordination. In spite of the fact official records indicate previous removals, you responded to Question 32 on your application negatively. Your reply has been given careful consideration, and it is the opinion of this command that the removal action is warranted.
4. If you so desire, you may appeal this decision under the Air Force Grievance Procedure established by Chapter E2 of Air Force Manual 40-1. Appeal under the grievance procedure must be made in writing within thirty (30) days after 9 July 1957, the effective date of your removal. The appeal should be addressed to the Commander, Headquarters Command, USAF, Bolling Air Force Base, Attention: Directorate of Civilian Personnel.
5. You majr discuss your case with Mrs. Wilkerson, Employee Utilization Officer, Directorate of Civilian Personnel, Building 410, Boom 2301, Bolling Air Force Base. She will explain any point about your appeal rights and procedures which is not clear to you.
*446 19. Instead of filing an appeal from the final decision of the Director of Civilian Personnel at Bolling Air Base of June 20,1957, plaintiff addressed a letter dated July 4,1957, to Directorate of Civilian Personnel, Employee Utilization Officer, Washington 25, D.C., stating that she was “supplementing” with additional information her earlier reply dated June 12, 1957, and requesting that her removal “for such cause as will promote the efficiency of the service” be “further clarified before final termination,” because she had had “a notice of a satisfactory efficiency rating * * * and satisfactory conduct.”
20. Under date of July 15, 1957, the Director of Civilian Personnel at Bolling Air Force Base wrote plaintiff as follows:
Receipt of your letter dated 4 July 1957 which was received in this office on 11 July 1957 is acknowledged.
Your attention is invited to paragraph 3 of letter of “Proposed Adverse Action” dated 7 June 1957 in which you were given ten (10) days in which to reply — not thirty (30) days as quoted in your letter of 4 July 1957. Inasmuch as you did reply to the charges within the ten (10) days in your letter dated 12 June 1957, this was considered as an official reply to the charges.
In the “Notice of Final Decision — Removal” dated 20 June 1957, you were advised that your reply had been given careful consideration, and in the opinion of this Command the removal action was warranted.
With reference to your employment with the Los Angeles Land Office and our SF 59 to the Commission, this was necessary to determine whether or not you had been barred by the Civil Service Commission from further federal employment.
Official files may be obtained prior to appointment. However, in accordance with customary practice, inactive files are received several weeks after appointment. Old official records do not relieve the applicant of the responsibility for correctly completing appointment applications or personal history statements. Each completed application for employment with the Federal Government must stand on its own merit. Old official records assist in substantiating the information contained in subsequent applications filed for the purpose of securing appointments.
*447 We regret to advise that the additional information contained in your letter of 4 July 1957 does not alter the facts in the original charge and in the opinion of this Command, the removal action effective 9 July 1957 is justified.
21. On July 22, 1957, plaintiff addressed a letter to the Commander, Headquarters Command, USAF, Bolling Air Force Base, Washington 25, D.C., in which she referred to the Notice of Proposed Adverse Action of June 7, 1957, her written reply of June 12,1957, the Notice of Final Decision— Removal, of June 20, 1957, and her supplemental letter of July 4, 1957, and requested that her removal be reviewed, based upon said correspondence and her 201 file.
Plaintiff either forgot to include reference to the Director’s letter of July 15, 1957, or had not received that letter at the time she prepared and mailed her letter of July 22, 1957, for on the next day, July 28, plaintiff addressed a second letter to the Commander of the Bolling Air Force Base, as follows:
1. I wish to appeal the decisions of the Directorate of Civilian Personnel on my removal from the service, based upon the above subject letters incorporated in my 201 file and other contents, together with the attached letter dated 22 July 1957. After the last letter was written I called Mrs. Wilkerson and asked where to send it, for Mr. Ganser’s letter of removal stated that it was the opinion of the Command that removal action was warranted. She stated that I could send a letter to the Commander, but that Mr. Ganser had stated that as far as he was concerned my letter of 4 July 1957 was my appeal.
2. It is my understanding that I have thirty {SO) days after removal date of 9 July 1957, and to use my letter of 4 July, which contained information that I believe should have been considered prior to removal, would further ignore my rights to appeal set out in your removal letters. Mr. Ganser’s letter states he received my letter on 11 July — -Registered Receipt No. 171166 (addressed to Bolling) shows that it was received by DCP David C. Jones 8 July 1957. When I was at Bolling on 9 July, I requested that your registry be checked, and that I be allowed to check with your postal authorities.
*448 8. It was called to my attention while I was there that I had not replied to the notation on my application “in the interest of the Government — Better position, etc.” I explained that my War Department experience was condensed in one block and covered several assignments and locations — not just Columbus Army Air Field.
4. I learned from the U.S. Employment Office that your statement “it has been determined that your removal is for the good of the service” may disqualify me from collecting unemployment compensation for a long time, and make it very difficult for me to find another position.
5. Shortly after I received my Form 50 — Notification of Personnel Action, I reported that the form contained an error relative to breaks in service. I did not receive a corrected form, but I think this further indicates that I had no thought or intent toward concealment of information or records. In fact, my application shows a six-month break when I was employed by the British Government (Australian Supplies).
* ❖ ❖ * ❖
22. The Air Force Manual providing for a Central Civilian Personnel Office covering employment, placement, and separation of employees at Air Force installations such as the Office of Scientific Research, outlined a detailed procedure applicable to employees separated involuntarily from Air Force activities. Initially, it provided for the appointment by the Commander of each installation of a Grievance Committee ad hoc, consisting of a nonvoting chairman from the Civilian Personnel Office, and three voting members, two civilian and one military.
The Committee’s functions were fact-finding and advisory, for the purpose of assisting the Commander in arriving at a decision by reporting a record of the hearing, findings, and recommendation.
23. Between June 20, 1957, date of the notice of plaintiif’s removal, and July 23, 1957, the date of her written appeal, plaintiff was given access to her 201 file and the opportunity to make copies of various papers therein for use in her appeal.
24. A Grievance Committee was duly appointed ad hoc and met to hear plaintiff’s grievance on August 27,1957, pur *449 suant to special orders of the USAF Headquarters Command dated August 6 and 19,1957. Plaintiff was present without legal representation or witnesses. The transcript of the proceedings consisted of 41 pages. Plaintiff was not sworn.
25. After reading the notice of charges dated June 7,1957, plaintiff’s answer of June 12, 1957, the letter of final decision of removal dated June 20, 1957, plaintiff’s additional letter of July 4,1957, and the Civilian Personnel Director’s reply of July 15, 1957, together with plaintiff’s application for Federal employment, Form 57, at Bolling Air Force Base, the Chairman advised plaintiff to present any evidence she wished.
Plaintiff made a statement and presented a written “Summary of Defense.” Thereafter, the record consists largely of questions by committee members and answers and argument by plaintiff.
Letters to plaintiff from Columbus Army Air Field, and the Los Angeles Land Office were attached to and made a part of the record.
26, Mrs. Wilkerson prepared a typewritten statement, which was attached to the Committee’s report after the hearing was concluded, as follows:
To Whom It Mat CONCERN:
Mrs. Nelms was interviewed in the Civilian Personnel Office and given a non-competitive steno test in July 1956. We assumed servicing of the AFOSE on 6 July 1957 and there were some dates of employment not accounted for on the SF 57 which Mrs. Nelms presented on the form indicated employment with the General Services Administration as “LAST PEBMANENT POSITION.” I requested Mrs. Nelms to bring her application up to date by the time she reported for processing. She had a large brown envelope of papers and offered them to me to review, indicating she had performance ratings, letters from people she had worked for etc. I advised I was only interested in confirming her eligibility for reinstatement and she rummaged through and came out with a letter from the Commission indicating she was eligible for reinstatement at any time she could find an appropriate position. I have talked to Mrs. Nelms many times since her appointment and she talks freely of people and places of employment but *450 she at no time indicated she had been removed from her position with Columbus Army Air Field for insubordination.
Mrs. Wilkerson’s statement was not shown to plaintiff at the hearing.
27. In the latter part of September 1957 the Commander at Bolling Air Force Base notified plaintiff that her removal had been substantiated by the Grievance Committee by letter as follows:
In accordance with procedures outlined in Chapter E2, Air Force Manual 40-1, the Chairman of the Grievance Committee has submitted to me for appropriate action the Committee’s recommendations with respect to your formal grievance hearing, together with all documentary evidence pertinent thereto.
Your written grievance concerning your removal from your position, proceedings of the formal hearing and other pertinent evidence have been fully reviewed and considered by the Committee and myself. Your removal has been unanimously substantiated by the Committee.
It was noted that you were removed under Part 9.102(a) (1) of the Civil Service Regulations which is procedurally correct for the separation of Career, non-veteran employees and that you exercised and were granted your rights under the Air Force Grievance Procedure.
The issues given consideration in arriving at my decision were: (1) Your signature on the supplement to your application (SF 58), signed and dated 9 July 1956. brought your application up to date and was binding, certifying as to the correctness of your entire work history. (2) You indicated that the responsibility for verifying employment and contents of an application rests with the agency and that the information surrounding your previous separations was on record and could have been secured. It is desirable to screen and verify information on applications to secure the most capable employees. Correct information on an application, however, is the responsibility of the applicant and each application presented for employment must stand on its own merit. Adverse information revealed after appointment is cause for removal action by the agency. (8) It is noted that you answered item 32 in the negative but failed to explain in detail the circumstances surrounding *451 your previous separations as required in item 34 in the event 32 was answered “Yes.” It is apparent item 34 would have been completed had you inadvertently answered item 32 in the negative. (4) The unpleasant circumstances surrounding your two previous separations would have made it difficult to have inadvertently overlooked them in the future. (5) It is noted that you included your employment with the Columbus Army Air Field and the Area One Land Office on your application yet you answered “No” to item 32 and failed to answer item 34.
In consideration of all the evidence it is my decision that the removal action was justified and will remain in effect.
If you are not satisfied with this decision, you have the right to appeal this decision through this Headquarters to the Commander, Air Eesearch and Development Command, Baltimore, Maryland for review and decision since you were removed from a field activity coming under the jurisdiction of that Command. This request for review must be submitted within ten (10) working days following receipt of this notice of decision. You are notified that you also have the right to review the minutes of the grievance hearing taken on 27 August 1957, subject to security regulations, for use in preparing your case for review.
If you so desire, the Director of Civilian Personnel or a member of his staff will assist you in processing your request for further review and decision.
28. The Air Force Manual on Grievance Procedure provided for the appointment of a permanent Grievance Beview Committee, not a hearing body, whose services were only advisory to the Commander, and whose functions were to review the complete records of the ad hoe Grievance Committee, etc.
29. On December 2,1957, the Deputy Commander for Be-sources of the United States Air Force wrote plaintiff as follows:
Your grievance case has been reviewed throughly by the Air Besearch and Development Command Grievance Beview Committee in accordance with the provisions of Chapter AF E2, Air Force Manual 40-1.
You are hereby notified that the decision of the Commander, Air Besearch and Development Command, is to *452 sustain the action of Bolling Air Force Base in removing you from the service. This decision is based on the following:
a. The evidence of record sustains the charge of falsification of your application for federal employment.
(1) In Item 32 of “Application for Federal Employment” (Standard Form 57), dated 1 January 1954, which is supplemented by “Experience and Qualifications Statement” (Standard Form 58), dated 9 July 1956, you answered “No” to the question: “Have you ever been discharged from employment because your conduct was not satisfactory or your work was not satisfactory ; have you ever resigned after official notification that your conduct was not satisfactory or your work was not satisfactory?”
(2) In Item 16 of “Application for Federal Employment”, dated 1 January 1954, which is supplemented by “Experience and Qualifications Statement”, dated 9 July 1956, you stated as the reason for your separation from Columbus Army Air Field, Columbus, Mississippi: “In interest of Government — Better position.”
(3) In Item 4, “Experience and Qualifications Statement” (Standard Form 58), dated 9 July 1956, you stated as the reason for your separation from the Area One Land Office, Department of Interior, Los Angeles, California: “Terminated as a GS-3 Typist . . . The manager had me terminated without any notice whatsoever.”
(4) There is no evidence of record to substantiate your claim that your reply to Item 32 of “Application for Federal Employment”, dated 1 January 1954, which is supplemented by “Experience and Qualifications Statement”, dated 9 July 1956, was inadvertently given as negative, nor is there evidence of record to substantiate your claim that you provided the appointing office, Bol-ling Air Force Base, with specific and sufficient data relative to your separation from Columbus Army Air Field, Columbus, Mississippi.
(5) The evidence of record establishes the fact that you were removed from employment at Columbus Army Air Field on 24 April 1944 for reason of insubordination and that you were separated for disqualification during your probationary period at Area One Land Office, Department of Interior, Los Angeles, California, on 13 January 1956.
This decision is final unless you request further review and final decision by the Secretary of the Air Force on *453 the basis of specific violation of law, Executive Order, rule or regulation of the Civil Service Commission, or regulation of the Air Force.
If a further review by the Secretary of the Air Force is desired, the request must:
a. Cite the specific law, Executive Order, rule or regulation which is alleged to have been violated.
b. State specifically wherein the law, Executive Order, rule or regulation has been violated.
_ c. Explain how and to what extent the alleged violation had an effect upon the action appealed.
d._ Be submitted within ten working days following receipt of this decision. Your request should be directed to the Secretary of the Air Force through the Commander, Headquarters Command, USAF, Bolling Air Force Base, Washington 25, D.C., and the Commander, Air Eesearch and Development Command, Attention: EDSPCE, Post Office Box 1395, Baltimore 3, Maryland.
You may direct any questions which you may have concerning your case to the Civilian Personnel Officer, Bolling Air Force Base, Washington, D.C.
30. Under date of November 3, 1957, plaintiff sent a letter to the Bureau of Departmental Operations, through Mr. William C. Hull, Executive Assistant, Civil Service Commission, Washington, D.C., which is as follows:
Further reference is made to my removal from Air Force Office of Scientific Eesearch, effective 9 July 1957. I am enclosing copy of letter to that command, with reply, and copy of letter dated 31 October 1957. I request that the following matters be considered, for throughout my appeals (oral and written) I have stated that actions placed against me were a subterfuge used in lieu of reduction-in-force procedure.
1. Section %0.1¡,{e) Federal Personnel Manual Revision 5/22/57
a. I was removed from the competitive level (Career Appointment) with approximately 13 years of service by adverse charges when reduction was in evidence and my office was operating on a deficit basis. Temporary employees and other employees with less service were not removed. I have a satisfactory efficiency rating, and was cleared for Secret. I had one promotion from GS-4 $3,925 to GS-5 $4,480 during that period of employment (19 July 1956-9 July 1957), and was told by my supervisor that I had been recommended for another promotion. It is my interpretation of the above regula *454 tion that the agency should remove unsatisfactory and specifically limited temporary employees from the competitive level “(For example, by notice of proposed adverse action)
b. I request that a representative of the Commission inspect the Retention Register, and other Exceptions who are still employed and have been given, I think, unwarranted protection for the past ninety days, while I, a satisfactory competitive employee have been displaced with adverse charges.
c. My Position Classification was changed from AFOSR 229 to OSR-53, effective 28 June 1957 (charges were dated 6/7/57-removal 7/9/57). I went through various channels to try to find the meaning of the change and thought that I was placed on an inactive job description prior to my removal. A new employee was hired, and I have recently been told that my position has been filled.
d. I have wondered if the charges and removal were instigated by a person or persons representing the Civil Service Commission for there was a temporary employee whose desk was surveyed for a very high rating, or, could the charges have been made as a result of my separation from Land Office, BLM, Department of Interior (1956). There was a letter in my 201 file from the Chief of Investigations, 8th Civil Service Region, Dallas, copy previously submitted, which stated that my application was acceptable insofar as my last separation was concerned. That was a request for a decision forwarded by the Washington Office of the Civil Service Commission.
e. If the charges were not made as a subterfuge to take care of favored employees, I believe that during a year’s time (19 July 1956-9 July 1957) that my application could have been reviewed sooner. I could have clarified any matters that were not clear, or charges could have been presented. I personally think that Personnel should have cleared the last separation with Civil Service prior to the time I entered on duty.
During the period I have worked in Government service, I have had three direct reductions and three separations with charges that were made as a result of reductions or reorganizations. I have submitted the Los Angeles separation in detail and requested adjudication and clearance. Under separate letters I am submitting a record of my Civil Service appointments. I request that it be routed through proper channels for clarification of my competitive status. I am also submitting *455 record of other reductions, for I certify that the effect of not only my employment subsequent to my resignation in 1954 (from GSA) but my future employment will be effected [sic] if untrue, derogatory reports are not corrected.
I will appreciate your prompt consideration, or further advice on the subject separation, for I am very anxious to have the charges removed and be reinstated to my position.
31. By letter of November 13, 1957, to Senator James O. Eastland, plaintiff reviewed the application of the Federal Personnel Manual, referred to the charges against her, the omissions from her application for Federal employment, and to her appeals to the Air Force and to the Civil Service Commission for reinstatement. A copy of this letter relating to plaintiff’s appeals appears to have been received on December 9, 1957, by the Appeals Examining Office of the Civil Service Commission.
32. On December 13, 1957, plaintiff sent a letter to the Chief, Appeals Examining Office, Bureau of Departmental Operation, through the Chief of the Investigations Division, Civil Service Commission, in which she alleged that the Office of Scientific [Research had not followed proper procedure in a number of particulars, including a finding that efficiency could be promoted by her discharge. She also referred to the charges relating to her prior separations from the Columbus Army Air Field and the Los Angeles Land Office and requested “adjudication of the prior separations” and the further assistance of the Commission in the clearance of her record.
33. By letter of December 17,1957, the Civil Service Commission advised plaintiff as follows:
We have reviewed your letters addressed to the Appeals Examining Office through Mr. Wm. C. Hull and through the Chief, Investigations Division and pertinent portions of the agency records in your case.
Basically, it appears that you occupied a competitive service position in a non-veteran status from which you were removed on July 9, 1957 following charges that you falsified certain documents.
Insofar as non-veterans competitive service employees are concerned, the Commission’s power of review is *456 limited to a determination whether the procedures required by Section 9.102(a) (1) of its regulations were observed in effecting the removal.
The agency letter of June 7, 1957 disclosed specific and detailed reasons for your proposed removal. You were allowed a reasonable time in which to reply to the charges of June 7, 1957 and you did reply by letter of June 12, 1957. You were furnished a written decision dated June 20, 1957. The above described actions constitute the extent of the procedures required by Section 9.102(a) (1) of the Commission’s Regulations and thus there appears no procedural violation.
Apropos of your contention that the agency took removal action for cause against you in order to defeat your rights against other employees in an iminent reduction in force, an employing agency is not barred from bringing disciplinary action during a reduction in force or at any other time.
No further appeal from this decision will be entertained unless it is submitted to the Chairman, Board of Appeals and Review, U.S. Civil Service Commission, Washington 25, D.C., within seven (7) days after receipt of this letter. Additional representations should be made in writing and submitted in duplicate with the appeal to the Board.
You will be advised further by the Investigations Division of the Commission concerning your request for action under Section 9.107 of the Civil Service Begulations.
34. Plaintiff’s letter of December 24, 1957, to the Chairman, Board of Appeals and Review, U.S. Civil Service Commission, reads as follows:
Reference is made to letter from your office dated 17 December 1957 signed by E. A. Dunton, Chief, Appeals Examining Office, stating that actions used by the agency constituted the extent of procedures required by Section 9.102(a) (1) of the Commission’s regulations, and there appeared to be no procedural violation in my removal.
Letter also states that an employing agency is not barred from bringing discplinary [sic] action during a reduction in force or at any other time.
While I realize that a non-veteran competitive employee has practically no rights of appeal in the present regulations, and the Commission has very little or no power to protect those very limited basic rights, I *457 do not believe the agency has completely followed the procedures in my case.
(a) I do not believe that a ten-day period is a reasonable length of time to allow any employee to reply to charges, and in my case only sis of those days were working days: while decisions and review by the agency (and Commission) are nearing the sixth month. Regulation states that when an employee answers the charges, his answers must be considered.
(b) Charges stated that I could appeal personally and in writing. Evidence in my written appeals, in transcript and in charges show that I requested a personal interview with Mrs. Wilkerson, who employed me and preferred the charges almost a year later, in order that I could review my file in her presence, for I knew that I had not fraudulently concealed information concerning the two separations on which the adverse charges were based. I worked at 14th and Constitution — personnel records were at Bolling Field. When personnel interview was not granted I called her and she stated that she had not had time to see me, but left the impression that the time would be extended. My written appeal was based on records that I had at home.
(c) When decision for final removal was received, dated 20 June 1957,1 did get a chance to view my folder and pointed out that evidence of both separations were of record, I wrote a supplementary letter of appeal, and postal receipt shows that it was received 8 July 1957. (I had also talked to her and told her it was in the mail). I went to Bolling AF Base on the date of my removal but they stated they would not consider the supplementary appeal since it was not received within the ten-day period.
(d) I requested an extension of time, which was denied. I also requested that removal date be extended to cover my annual leave, in order to find another position. There were vacancies in Federal Agencies, as well as in the Department of Defense.
(e) Thus, my rights were violated and evidence which was of record was not considered. Also in the file containing the stenographic transcript of my hearing, there was a statement which had been obtained from Mrs. Wilkerson after the hearing and made a matter of record with the hearing. It stated, in part, that I had a large brown envelope of papers with me when I was employed, but that she was interested only in confirming eligibility for reinstatement. She further stated that I rummaged through the papers and produced a letter from the Com *458 mission stating that I was eligible for reinstatement at any time I could find suitable employment.
(f) Furthermore, I do not believe that there is any evidence of record to show that the adverse charges were made to “promote the efficiency of the Government, for I worked for the Air Force Office of Scientific Research, have had 14 years of service, practically all of which have been in contractual details. There is much to be done in our research and development program today, and such work is done by Government contracts with Universities and commercial firms.
(g) Federal Personnel Manual also shows that the agency has a responsibility as shown in Section 9.101 to separate an employee under Section 9.102, which is further defined under Section 2.106. I entered on duty as a result of a non-competitive stenographic examination at Bolling Air Force Base 19 July 1957. Paragraph (4) under that regulation states that an eligible may be denied appointment for “Intentional false statements or deception or fraud in examination.” Federal Personnel Manual X-l, page 42, TS 529 also shows agency’s responsibility for filling positions from noncompetitive examinations, and definite instructions regarding appointments after a separation. Mrs. Wilkerson’s job description no doubt shows her responsibilities, too, for making appointments, separations, etc.
(h) Furthermore, I am not sure that the Form 57, dated 1 January 195b, referred to in charges, is my official application. All copies submitted to other offices in the Department of Defense, Federal Agencies, as well as copies that I have show a date of 15 January 1954 for the Form 57 and a current 1956 date for the Form 58. This refers to applications since my termination in Los Angeles in 1956. I copied an old form 57, listing all of my employment to 15 J anuary 1954. Form 58 had only a temporary Government position and a probational appointment at Los Angeles (although I was separated as a temporary appointee there) in J anuary 1956.
(i) Charges showed that information was not known of the 1956 separation, or that I would not have been appointed if this information had been known by that activity. Letter from Civil Service Commission, 8th Regional Office, Dallas dated 23 October 1956 shows that they reached a decision that my application is acceptable and letter shows “admitted” separation.
(j) Letter from Appeals Examining Office also states that an agency is not barred from bringing disciplinary *459 [sic] action during a reduction-in-force, or any [sic] any time.
While that may be true, Section 20.4(e), Revision 5/22/57 (TS 571) states that an agency may take action, by notice of proposed adverse action to remove “unsatisfactory employees” or temporary or non-status employees from the competitive level. I am a Career employee and was not an unsatisfactory employee. Furthermore, while an agency may not be “barred” from taking this means to remove a status employee, there are many regulations which have been written, apparently the result of laws and proper legislation, that state all employees have certain rights, and cites definite procedure to be followed for non-veterans as well as veterans, status as well as non-status employees.
I do not ask that this letter be used as a formal appeal, for Investigations Division has not informed me of a decision under Section 9.107. If the decision is not favorable, I request that I be allowed to submit additional evidence as a supplement to this letter, for consideration by Board of Appeals and Review.
35. Under date of December 31, 1957, the following letter was sent to plaintiff by the Civil Service Commission:
This is in further reference to your request for a clearance of record for non-competitive appointment under the provisions of Section 9.107 of the Civil Service Regulations.
After consideration of all of the facts and circumstances in your case, including the information furnished by you in your affidavit, it has been determined that you are suitable for further employment in the. competitive Federal service insofar as your removal from the Department of the Air Force on July 9, 1957, is concerned.
You have eligiblity for reinstatement resulting from your previous Federal employment and may be considered for non-competitive appointment to any position in the Federal service for which you can meet the qualifying requirements.
Application for appointment should be made directly to the appointing officer of any agency in which you wish to be employed. All questions on the application form should be read carefully and answered completely and truthfully. As the Commission does not have authority to remove or change any part of an official record submitted by another agency, the favorable determination made as a result of your request for clearance of record *460 does not serve to remove from your personnel file the record of your removal from the Department of the Air Force. Therefore, this determination does not relieve you of the duty to report your removal from the Department of the Air Force on any application you may file in the future.
The Commission is without authority to direct your reemployment in any department or agency of the Federal government. The Commission does not maintain a list of vacancies for positions in the Federal service. Information concerning employment opportunities at a specific installation may be obtained by contacting the appointing officer at the place where employment is desired or by writing the personnel officer of a department or agency in Washington, D.C.
The documents you sent for consideration are returned herewith as you requested.
36. Under date of January 5, 1958, plaintiff sent a letter to the Civil Service Commission which reads, in part, as follows:
I have received Clearance of Records from Department of Investigations for subject separation. Since the clearance does not remove the charges, I request that records of the case be reviewed and investigated in accordance with authority of Section 9.106 (ZI), for procedural violation * * *.
The letter continued with five additional pages in which she reviewed various elements of her case and made further reference to her letter of December 24,1957. Copies of plaintiff’s letters to the Civilian Personnel Office, Bolling Air Force Base, previously furnished the Civil Service Commission, were enclosed. No information or material data is set out in plaintiff’s letter of January 5,1958, in addition to that concerning which the Commission Board of Appeals and Review had previously been informed.
37. On January 10,1958, the chairman of the Commission Board of Appeals and Review wrote plaintiff as follows:
This refers to your appeal from the decision of the Commission’s Appeals Examining Office that the Bolling Air Force Base complied with the procedural requirements of the Commission’s regulations in separating you from the position of Clerical Assistant (Stenography), *461 GS-S, effective July 9, 1957. The decision of the Appeals Examining Office has been carefully reviewed in the light of the representations in your letters of December 24,1957 and January 5,1958 to this Board.
Civil Service Regulation 9.102(a) (1) provides that an employee shall be given advance written notice of any proposed removal action, an opportunity to reply in writing to such notice, and a written decision on the reply. Also, the charges in the advance notice must be set forth specifically and in detail, and the employee must be allowed a reasonable time for filing his answer to the charges.
Under date of June 7, 1957 the Bolling Air Force Base notified you of the proposal to separate you from your position on a charge of falsification of your application for Federal employment. This charge was set forth specifically and in detail as contemplated by the regulation, and you were given ten days from the date of your receipt of the advance notice in which to reply to the charge. Under date of June 12, 1957 you replied to the notice of proposed adverse action. However, under date of June 20, 1957 the agency notified you that final decision had been made to remove you from the service, effective July 9, 1957. You were notified that your reply of June 12,1957 had been given careful consideration, and that it was the opinion of the Command that the removal action was warranted. You were also furnished with a copy of the agency’s notification of personnel action dated July 9, 1957 journalizing your removal for “falsification of application”.
This Board has determined that, as indicated herein, the Bolling Air Force Base complied with the procedural requirements of Civil Service Regulation 9.102(a) (1) in removing you from the service. Accordingly, the decision of the Appeals Examining Office is affirmed.
In arriving at this decision, the Board concluded that ten days from the date of your receipt of the notice of proposed adverse action was a reasonable length of time for reply to the charge of falsification of application. Generally five days is considered to be a reasonable length of time for reply to charge, although the Board considers the facts and circumstance of the particular case in determining whether a reasonable length of time for reply was allowed by the agency.
With respect to your contention that the agency did not allow you to reply personally as well as in writing, Civil Service Regulation 9.102 (a) (1) makes no provision *462 for a personal appearance in connection witb a removal action.
The Commission’s regulations provide that except as required by Section 14 of the Veterans’ Preference Act, the Commission shall not investigate or review the sufficiency of the reasons for removal of an employee. Therefore, since you are not entitled to veteran preference, the Board’s review of your case was necessarily limited to those procedural matters within its jurisdiction.
38. On January 15, 1958, plaintiff again wrote the Commission Board of Appeals and Beview with reference to the Board’s letter of January 10, 1958, which affirmed the decision of the Commission Appeals Examining Officer that Bolling Air Force Base had complied with the procedural requirements of the Civil Service regulations in removing plaintiff.
In this letter plaintiff began her argument as follows:
I cannot see any justification for your decision, nor can I see that a careful review has been made.
Plaintiff pointed out that the Board made an error in stating that the position from which she was removed was GS-3, when it was a GS-5. Plaintiff then set forth ten paragraphs of criticism of the agency involved (Office of Scientific Be-search, Bolling Air Force Base), of the charges and her removal, and of the Board with respect to her appeal to it.
This letter was sworn to before a District of Columbia Notary Public on January 16,1958.
39. By letter dated April 21, 1958, the chairman of the Commission Board of Appeals and Beview replied to plaintiff as follows:
Further reference is made to your letter of January 15, 1958, concerning the decisions of the Appeals Examining Office and this Board that the Department of the Air Force followed the procedural requirements of Section 9.102(a) (1) of the Commission’s regulations in removing you from the service.
The representations in your letter have been noted. However, for the reasons set forth in the Board’s letter of January 10, 1958, no basis exists for a change in the previous decision. The Board’s decision of January 10, 1958, remains as the final decision on your appeal to *463 the Civil Service Commission under Part 9 of tbe Commission’s regulations, and your administrative remedies within the Commission were thereby exhausted.
As a matter of information, the failure of an agency to notify an employee of the right to appeal to the Commission under Part 9 of the Commission’s regulations does not constitute a fatal procedural defect in the final notice. Since your appeal to the Civil Service Commission was accepted and adjudicated, you were not deprived of your appeal right as a result of the agency’s failure to include such notice in its decision.
We regret that through inadvertence our decision of January 10, 1958, referred to your separation from the position of Clerical Assistant (Stenography), GS-3. The decision is hereby amended to include reference to your separation from the position of Clerical Assistant (Stenography), GS-5.
40. In the latter part of December 1957, concurrently with her proceedings and appeals to the Civil Service Commission, plaintiff continued with her appeal to the Air Force. The decision of the Air Eesearch and Development Command of December 2, 1957, sustaining plaintiff’s removal from the Office of Scientific Eesearch, Bolling Air Force Base, was accomplished pursuant to paragraph 13, page 12.01 of the Air Force Manual. Paragraph 13 provided that the Air Force Command decision would be final unless plaintiff requested further review and final decision by the Secretary of the Air Force.
41. Under date of December 21, 1957, plaintiff submitted a letter to the Secretary of the Air Force, through the Commanders of the USAF Headquarters Command, Bolling Air Force Base, and the Army Eesearch Development Center in Baltimore, Maryland, consisting of 45 paragraphs, requesting further consideration and review of her case, based on both the Civil Service regulations and the Air Force Manual. The letter does not develop any new facts or evidence in addition to that which had already been presented.
On December 24, 1957, plaintiff sent a letter to the Secretary of the Air Force requesting that one of the subpara-graphs of her request for review, dated December 21, 1957, be corrected with respect to the dates therein mentioned.
*464 42. Plaintiff wrote another letter to the Secretary of the Air Force, dated January 12, 1958, enclosing the Civil Service Commission letter of December 31, 1957, which she described as “clearance of record from the Commission.” She requested that “this clearance, dated 31 December 1957, be taken into consideration” with the Civil Service Commission letter of October 23, 1956, which she also termed a “clearance,” and her argument concerning the charges against her and her alleged appeal rights. She closed the letter to the Secretary of the Air Force as follows:
Since appeals and reviews are now in the seventh month, and my financial condition caused by unemployment since 9 July 1957 is acute, I urge that you give prompt consideration to my case, and that I be restored to a position of equal grade and pay, or higher, than the one I was holding, without loss of back pay.
43. The decision of the Secretary of the Air Force sent to plaintiff on March 27,1958, is as follows:
I refer to your letter dated 21 December 1957 appealing your separation to the Secretary of the Air Force and to the supplementary letters of 24 December 1957 and 12 January 1958 in connection therewith.
_ You are advised that your appeal fails to meet established requirements set forth by the Secretary. It is noted that in the main your allegations of violations concern Part 9 of the Civil Service Commission regulations. The Board of Appeals and Review of the Civil Service Commission on 10 January 1958 determined that all of the procedural requirements of Part 9 had been observed by the Air Force. Since the Board of Appeals and Review is the final authority on appeals concerned with the Commission’s regulation, it would neither be pertinent nor appropriate for the Secretary to review a finding by that Board. In addition it is Air Force policy in the interest of economy and efficiency to deny appeal rights of the same matters which have been appealed to the Civil Service Commission.
Your other allegations concern Chapter X-l and Part 20 of the Commission’s regulations. Part 20 concerns reduction in force which is not applicable in your situation. You have failed to show how and to what extent any alleged violation of Chapter X-l had any effect on the section which you appealed.
*465 Accordingly it is the decision of the Secretary that the decision of the Commander, Air Research and Development Command, be sustained.
44. On May 16, 1961, plaintiff submitted to the Department of Commerce an application for Federal employment on Form 57 which was originally dated March 30, 1958. Added thereto were continuation sheets bringing her Government employment up to date by listing the following employment data: Federal Prisons Industries, Department of Justice, April 7 to July 4, 1958; U.S. Senate, Office of Senator John F. Kennedy, January-February, 1959; and House of Representatives, M. C. Harley O. Stoygas, February to July 1959. This application to the Department of Commerce was made directly to Mr. Carlton Haywood, Personnel Officer. In preparing the form plaintiff correctly answered “Yes” to questions 32A: “Have you ever been discharged from employment because: (1) Your conduct was not satisfactory? (2) Your work was not satisfactory?” She also correctly answered “No” to the following questions 32B: “Have you ever resigned after official notification that: (1) Your conduct was not satisfactory? (2) Your work was not satisfactory ?
Question 32 contained the following instruction:
If your answer to A, B, or O is “Yes,” give details in Item 3Jj, as clearly as you can remember, including the name and address of employer, approximate date, and reasons in each case.
In Item 34 plaintiff made the following statement:
Cleared for Reinstatement by Civil Service Commission.
The pertinent correct reasons given on the application for employment (Form 57) for leaving the agencies from which she was discharged are summarized as follows:
Columbus Army Air Field — “Separated (insubordination) * * *”
Land Office, Bureau of Land Management — “Separated as GS-3 Typist (Failure to qualify during prob. period).”
Air Force Office of Scientific Research — “Removal— Falsification of Appln * * *”
*466 The Form 57 contained above plaintiff’s signature the same two paragraphs previously quoted in finding 11.
45. The Civil Service Commission ruled that, irrespective of her prior discharges from Federal employment, plaintiff’s Status on the Civil Service register was unchanged and she was not barred from making application for Government employment with any agency or department or from being appointed if she was otherwise qualified. Actually her further employment by a Federal department or agency would be within the discretion of the agency concerned.
46. Under date of May 25, 1961, the Chief, Employment Division, Department of Commerce, wrote plaintiff as follows:
This refers to your interview with Mr. Carlton Hayward on May 16, 1961, regarding employment opportunities in the Department of Commerce.
We have carefully reviewed your employment history and have noted that you were removed for cause from three previous positions. In view of this, we are not inclined to give any consideration to your possible employment here in the Department.
I am sorry I cannot give you a more favorable reply.
47. In several of plaintiff’s formal applications for Federal employment (Standard Form 57) she failed to give complete and correct information concerning her discharges from Columbus Army Air Field, the Los Angeles Land Office, or the Air Force Office of Scientific Eesearch. With respect to each of those three places of prior employment, she omitted or failed to state the real or correct reason for leaving the particular jobs described. In her most recent application for Federal employment she did state that the reason she left the Air Force Office of Scientific Eesearch was removal for falsification of her employment application. She also stated that “clearance” had been approved by the Civil Service Commission for reinstatement. The clearance given by the Civil Service Commission was not a clearance for reinstatment but, in effect, it permitted plaintiff to file additional applications for Federal employment and to be employed by any agency or department of the Federal Government which was willing to accept her, with knowledge *467 of her prior record. The Civil Service Commission was not authorized to direct any agency or department from which she had 'been discharged to reinstate her in any position.
48. In none of the three instances of plaintiff’s discharge or removal discussed in the preceding finding is the administrative decision shown to have been arbitrary or capricious or unlawful or not supported by substantial evidence.
49. Neither the decision of the Civil Service Commission Appeals Examining Office, which held that Bolling- Air Force Base complied with Civil Service regulations in removing plaintiff from Federal employment, nor the decision of the Civil Service Commission Board of Appeals and Review affirming such determination, is shown to have been arbitrary or capricious or unlawful.
50. Plaintiff met the qualifications for a position as Clerk-Stenographer with the Air Force Office of Scientific Research and was accepted as an employee of that agency. Her work was considered to be satisfactory. She was given a promotion from grade 4 to grade 5 within less than a year from her date of employment, and the defendant has offered no evidence indicating any adverse criticism of her performance of her duty in that assignment.
It is plaintiff’s position that she concealed nothing from any prospective employer and specifically that she told Mrs. Wilkerson at the time of her initial interview that she had been previously “fired.” Mrs. Wilkerson testified to the contrary, but admitted that a complete record of plaintiff’s previous periods of employment and separations from employment were in defendant’s files at the time. Plaintiff has testified that she had, in effect, been advised by more than one Federal official to forget about having been previously discharged for unsatisfactory service and to omit any reference to that fact on Forms 57. She could only remember the name of one such official and his position at the time of an interview with him. He denied giving her such advice when called as a witness by defendant. It is not established that any such advice was given.
On the basis of plaintiff’s period of satisfactory service of approximately one year, her promotion during that period, *468 with no unsatisfactory efficiency rating made by her superiors, a determination could have been made to retain her as an employee. Such a course of action was not adopted, however, and the agency which last employed plaintiff (the Air Force) processed her dismissal. It is found that the determination to dismiss plaintiff, rather than retain her as an employee, was within the discretion of the agency concerned.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law plaintiff is not entitled to recover and the petition is therefore dismissed.

 “The Commissioner : * * * Tie witness will be allowed to finish lier statement. Now, she Ras testified that it was a termination and tRen she is explaining why she used the word ‘termination.’
“Mr. Lowby : Mr. Commissioner-
“The Commissioner : Of course, using only the word ‘termination’ doesn’t tell the whole story. We know that from the other evidence in the case.
“But she was asked to explain why she used that word or why she didn’t put the other in.
“Mr. Lowry : Pardon me for interrupting, Mr. Commissioner. I did not ask her that question.
“The Commissioner : I have already taken care of that. I said you asked her why she didn’t say it was for insubordination.
“Mr. Lowry : Yes.
“The Commissioner: All right. Now, X just corrected myself before you interrupted. Now, let’s proceed. * * *
* * * # *
“The Witness : Well, according to my knowledge of personnel, at the time we called it charges, such as I had personality charges. And President Roosevelt ruled — I do not know whether it is by Executive Order or not— that it was a difference between a ‘termination’ and a ‘separation.’
“That if you got a personality charge it did not reflect against you ; that you could transfer on that.
“That there was so much work to be done, and you did not — unless it said that you did something against the Government you went on as a ‘termination.’
“You didn’t clear it with the Civil Service Commission. It wasn’t necessary to clear it. You did not get relieved from the Government service by a termination.
“You went on on terminal leave, as my papers, if he has read the court record, had the complete — and my testimony there, the letters of charges. I told you yesterday — I went by letters that were in there. They didn’t announce ‘fired’ ever, but they called it termination of services in the subject.
“ ‘You will be placed on terminal leave as of so-and-so.’ They gave me five days, not thirty days, ten days, thirty days. They gave me five days. And *428 1 was not actually removed, so far as my knowledge of regulations, until at the end of my terminal leave, because X worked for the Government.
“I couldn’t go out and get a job from Sears & Roebuck or the British or something until after sixty days were over.
“It was a termination, according to the regulations, at that time.
“Now, X got fired as a result of it, because I didn’t answer it and it did become conclusive. But if I showed the people my regulations, the charges!— and there were thousands of those personality charges floating around then.
“And as far as I am concerned, ‘termination’ means to end. That is my way of thinking. It is an honest — if I have overlooked it — that is my — as well as I know.
“The Commissioner: Of course, ‘termination’ means to end. But the question is:
“Why didn’t you give the reason for the termination? That is the question.
“The Witness : Well, I presented the charges, I am sure, and let them see the reason, the personality charges, because I had these letters that I presented.
“The Commissioner : You mean, it was your opinion-
“The Witness : Yes.
“The Commissioner : —that they knew why you were previously separated from the service?
“The Witness : Oh, yes. Every job I have ever had, I presented those little letters of Army papers.
“But I have explained — I am going too far out, but I have explained, in my grievance, and they won’t consider my answers about this in detail.
“The Commissioner : Yes, but when you apply for a new job, and you don’t put on there the whole story as to what happened, and the reason for the previous termination, then there could be raised in the mind of someone, when they subsequently find out that you were discharged for Insubordination, for example, that you didn’t tell the whole story.
“And I am sure that is the basis for the question by counsel for the Government, to try to get your reasons, if you have any, for not giving the complete story as to the insubordination or giving insubordination as a reason for the termination.
“The Witness : Well, now, as I see it, they wrote a charge that I did not— and he should have — It is in the 201 file. And it is of record.
“But the charge did not read ‘insubordination.’ The charge said that I didn’t get along with the people who worked with me, and that I was consistently insubordinate to officers, which was not true.
“The Commissioner: Well, insubordinate to others would be insubordination.
*429 “The Witness : Well, now, I have explained in my hearing before the Air Force, and they didn’t take any of my answers in consideration that X know of, but there is a record of the letters in there. And it shows where I sent them.
“And he has that information, the subject, where it speaks of terminal leave, and things of that kind.
“And it is my thought — so that’s the way it is.
“And, to my knowledge, I am appealing the Air Force’s separation and based on applications and information I gave them.
“The Commissioner : Well, of course, you don’t appeal from an administrative decision in a case of this kind.
“This is a suit in court, a trial de novo.
“Now, naturally, the trial is being held because of what was done by the administrative agency but, strictly speaking, it is not an appeal from their decision in the usual sense of the word.
“The Witness : Well, I — >
“The Commissioner : Now, I agree that you have gone somewhat afield, but that is your answer concerning the failure to state on the document, which you have been discussing, the fact — the exact reasons for your termination?
“The Witness : My view was that it was a termination.
“The Commissioner: Well, of course, a termination can be with great honors, too, and they might add summa cum laude or something like that, but the word ‘termination’ itself doesn’t just mean termination of a loyal and faithful employee or termination of an unfaithful employee.
“The word ‘termination’ can be interpreted to mean all of those things. And I am sure that is one reason why the Government counsel wanted to give you an opportunity to explain why you left out, what, naturally, is a very important aspect of the case, if it was withheld from the Government.
“But you say that in many other documents they had that, but it wasn’t on this application ?
“The Witness : Well, it has the ‘termination’ and that’s not on some of my applications.
“And in each instance I showed it to the people. It went through the Office of the Secretary of War. It could have been expounded from my file. They sent me on a hired [sic] job with better pay.
“They called it ridiculous. They — I say, ‘Must I show it as an X?’
“And they said, ‘Well, it’s just so ridiculous, that’s all right, don’t show it.’
“I talked to an officer in the Quartermaster General’s Office and he said, ‘Actually, they court-martialed you without a trial.’
“So I had nothing to — I don’t mind putting ‘removal’, but I always just said that I was fired. And I have done that. And I have stated in my testimony at times I didn’t show it at all.
*430 “But that is in my testimony for them, to—
“The Commissioner : Yes, but -when you file an application for a Government job they shouldn't have to go back through your old records to find out if you were ever removed or dismissed or fired.
“The questions and answers are there for you to give them the story which you, I am sure, understand.
“The Witness : Well, I have shown them the charge each time that X got ‘termination.’ And it didn’t—
“The Commissioner : Well, showing them that you got a termination doesn’t show them that you were separated because of insubordination.
“That is not synonymous with that sort of a discharge at all. ‘Termination’ doesn’t carry with it any indication that you were the wrong kind of an employee. You seem to think it does.
“On the word ‘termination,’ I don’t think the court would interpret it as meaning ‘kicked out’ because you were no good or ‘insubordinate’ or something like that.
“ ‘Termination’ is a general term that doesn’t necessarily have a meaning which you seem to think should be implied.
“The Witness : Well, they could have called it to my attention at the time, because I did not conceal it or even from Mrs. Wilkerson.
“She saw the charges.
“The Commissioner : Well, I would have to say to the extent that you didn’t mention it, it may not have been concealed, but it was not divulged.
“The Witness : Well, it wasn’t intentionally concealed at any time.
“The Commissioner : Very well. Very well.
“I am sorry, Mr. Lowry, to take up so much time, but I am just trying to see if X could clarify it a little.
“Mr. Lowri ; I must, for the record, move to strike the witness’ testimony in answer to my question, and, in fact, to the Commissioner’s questions as incompetent and totally irrelevant.
“For example, when she said that she was interpreting the charges, of what she was charged with, as a personality charge, and her reference to President Roosevelt, and regulations without pointing out any particular regulation is not — it is ambiguous.
“However, I make the motion.
“Mr. Witsil: Well, I object to the motion to strike. This is the question. He asked ‘Why,’ and she gave her reasons.
“Now, whether or not Mr. Lowry likes them or not is something else. Once he asks the questions and you permit the answers he is bound by the answers.
“The Commissioner : Well, the record will stand as given.”

 This was a typographical error. The correct month was January.